# Exhibit A

|  |  |
|---|---|
| In the Matter of Arbitration Between | ) FMCS NO.: 180105-0016 )  ) GRIEVANCE: IMPROPER |
| INTERNATIONAL ASSOCIATION OF MACHINIST AND AEROSPACE WORKERS, AFL-CIO | ) LAYOFF )  ) ARBITRATOR'S AWARD ) |
| And | )  ) |
| UNITED LAUNCH ALLIANCE | )  )  ) |

The undersigned arbitrator, having been selected by the parties in accordance with their Collective Bargaining Agreement (CBA) (JX1) effective May 4, 2015 – May 6, 2018, having heard and read the testimonial and documentary evidence of the parties, and having reviewed, analyzed, and evaluated the exhibits, proofs, objections, and written argument of the parties, hereby finds, decides, and awards as follows:

1. United Launch Alliance, ("ULA" or "Company"), has raised a procedural arbitrability issue, which is being resolved for the following reasons established by the evidence adduced at the hearing in this matter:

    a) ULA contends the International Association of Machinists and Aerospace Workers, AFL-CIO ("Union" or "IAM&AW") demand for arbitration is untimely for it did not comply with the Step 4 Arbitration referral of ten (10) working days if the grievance is not settled in Step 3. According to Step 4 if "recourse is to arbitration, the Union shall notify the Company in writing that it desires the case to be arbitrated", (JX1, 6.05 D (1).

    b) According to the Company, an e-mail (JX4) was sent to Jason Hardwick, Grand Lodge Senior Representative on August 10, 2017 with the Company's Step 3 response, attached, denying the grievance. The Union's e-mail (JX6) notification the Union was rejecting ULA's Step 3 response and was moving the grievance to the next step of the grievance process was sent October 10, 2017. There is no evidence of an extension of the time limits to file the Union's notification and no explanation from the Union relative to why its notification does not comply with the CBA. It is noted that the Company sent an additional copy of the Step 3 response to Mr. Hardwick on 9/28/17 and Mr. Hardwick acknowledged its receipt without referring to the August date on the initial response.

7

c) A review of Article 6 of the CBA outlines the grievance procedure. In Article 6.03 the failure to file a grievance or general grievance within the ten working day time limit renders the grievance void. Article 6.04 B. requires grievances relating to discharge, disciplinary suspension or lay-off due to reduction in force must be filed within the 10 working day time limit or the grievance shall be rendered void. Although there are other time limits in the grievance procedure and the grievance steps, a failure to adhere to them does not create a voidable or terminating sanction. It would appear ULA and the Union intended a termination sanction only for the failure to file the initial grievance within 10 working days and the arbitrator concludes that was the intent of the parties. Therefore, the grievance is arbitrable and the Company cannot avoid its obligations under this grievance.

2. The grievance alleges the Company has violated the seniority, lay off and recall and travel provisions of the CBA. ULA, a joint venture between Boeing and Lockheed Martin formed in 2006, provides satellite launch services for the United States government and private customers from both coasts of the United States. West Coast launches are from Vandenberg Air Force Base, California; East coast launches are from Cape Canaveral Air Force Station, Florida. Decatur Alabama is a manufacturing and maintenance site with employees having specific skill sets which are also available at the launch sites. Depending upon the Company's needs employees will travel between the three locations. The Union contends the Company by transporting employees from Cape Canaveral to Vandenberg and having Cape Employees perform work Vandenberg employees on lay off could perform violates the CBA. The Union cites numerous reasons to support its position the CBA has been violated with strong opposition from the Company to the contrary:

   a) One of the issues in this case, according to the Union, is fulfilling travel requirements in Article 9.07 of the CBA (JX1). It is a change of language from what was found in the previous CBA (JX2) at that point labeled Article 9.08. The key difference between the two articles is the removal of an introductory paragraph that stated: "Pursuant to discussions during the 2008 negotiations related to travel of 1 to 30 days between geographic locations whether or not employees are on layoff, the following shall apply:" A. and B. comprised 9.07. The Company takes the position the removal of that entire sentence was simply clean up as they were no longer in 2008 negotiations. The elimination of the entire sentence including "whether or not employees are on layoff" is relevant and important given the provisions of the CBA regarding seniority and the order in which employees are to be laid off.

   b) Under Article 5.2 (A) of the CBA seniority is exercised on a classification basis within each geographical location. The Union contends this has always been applied as there are separate seniority lists at each of the three locations. When an employee from one location visits another location, they are at the

2

bottom of the seniority list at the travel location, irrespective of what their seniority is at their home location. Article 5.11 (A), Layoff and Recall states: "In cases of reduction in force, recall from lower graded classification, recall, regression and layoff, selections will be made on the basis of the last hire date seniority with the Company within an established classification and geographical location". The Union argues an employee cannot be laid off, while an employee with lower seniority in their classification is working. An exception to the general seniority rule; retention or recall out of seniority order is subject to provisions of Letter of Understanding No. 5, in Appendix D of the CBA. Letter of Understanding No. 5 is specific to particular critical skills including inspection and arc welding, none of which are at issue in the lay off before the arbitrator.

c) Article 5.11 (J) indicates an employee offered a recall that is expected to last less than sixty (60) days may decline such an offer and retain rights to the classification held at the time of layoff. The Company claims all employees were recalled in winter of 2018 but none of the employees recalled came back and they lost all recall rights and lost all right to recovery. A review of the Company's records showing the number of employees who travelled from Decatur and Cape Canaveral and performing work at Vandenberg when Vandenberg employees were on layoff, shows the recall was made in January 2018 and did not last 60 days.

d) Section 5.12 of the CBA covers voluntary accelerated layoffs. An employee who requests and is granted a voluntary layoff gets placed at the bottom of the recall list irrespective of their seniority. After one year passes, the employee may elect to return to the proper seniority place on the recall list.

e) Section 5.13 of the CBA refers to temporary layoffs which are defined as "ten (10) working days or less", which are caused by delineated conditions, or other conditions "beyond the control of the Company". Employees are not placed on a recall list but mandatorily returned to work after the end of those short layoffs.

3. The Company, as previously stated above, has provided strong opposition to the Union allegations and although each response to the allegations has been read and evaluated, all such responses may not be included below:

a) The Company contends the Union's claims are unsupportable for the Company and its predecessors have been traveling employees (Aerospace Technicians or "ATs") between sites while ATs at the travel site have been on layoff for decades without a grievance being filed. ATs continued to travel after removal of the language in 2015 of Article 9.08 (JX2) without a grievance being filed or an objection being made upon the Company's announcement to layoff ATs and to increase ATs travel.

3

    b) Prior to the joint venture, Boeing built and launched Delta rockets, while Lockheed Martin built and launched Atlas rockets. Delta and Atlas launch teams were separate bargaining units with separate collective bargaining agreements and could not "cross over" to work on the other bargaining unit's rocket. Employees at the Decatur facility comprised there own bargaining unit with their own collective bargaining agreement.

    c) Recognizing the need for work force flexibility, ULA and the Union agreed to combine all three labor agreements into one agreement during the first collective bargaining negotiations following the formation of the joint venture. The result was achieved in 2008. With the merging of the labor agreements ATs from Vandenberg, the Cape and Decatur became one bargaining unit capable of performing work on both Atlas and Delta rockets at each location site.

    d) The Company denies any violation of the CBA has occurred contending the Union by its failure to object or file a grievance on behalf of its Cape and Vandenberg members before and subsequent to the removal of the phrase in the CBA referred to above in 2 a), has waived any right to file the current grievance.

4. The arbitrator having reviewed all of the documentary and testimonial evidence of both parties disagrees with the Company claims for the following reasons supported by the evidence:

    a) During the period of time giving rise to the Company's claim of waiver and establishment of a past practice, the CBA language of JX2 was part of the labor agreement and the Union believed it was following the agreement as written. There was no discussion during negotiations as to the effect the removal of "whether or not employees are on layoff" would have on the agreement or its recall and seniority provisions which were not amended in 2015.

    b) In order for a grievance to be filed there must be a written claim by a member of the bargaining unit the Company has violated specific provisions of the CBA and the absence of such filings or objections cannot constitute waiver or acquiescence of past practices.

    c) A review of the Company and Union exhibits shows on June 2, 2017 the Company placed multiple employees from Vandenberg on forced layoff with recall rights that did not expire until 2023. There were only two employees on voluntary layoff who went to the bottom of the seniority list and about 30 plus employees traveling to Vandenberg while Vandenberg employees were on layoff. None of the travelers should have been used until all of the ATs at Vandenberg had been recalled.

    d) The Company's claim that recalling Vandenberg ATS was an inefficient use of manpower in view of the increased competition from other launch companies and the need to keep ATs trained and available to meet customer requests did not give the Company the right to unilaterally violate the CBA

5. The grievance is sustained.

6. The remedy is for employees who were improperly laid off when there was work to be performed at Vandenberg to be made whole for the days they would have worked but for the Company's failure to recognize and apply their seniority privileges.

7. The calculation and determination of the amounts due pursuant to the general grievance is remanded to the parties who will meet and confer and agree as to the amounts due and payable with payment thereof due within ninety days following the date of receipt of this award by the parties.

8. The arbitrator will retain jurisdiction to assist the parties with the implementation of the remedy upon the written request from either party, if necessary, in the event of a dispute.

March 10, 2019  
Cambria, California

_____  
George E. Marshall, Jr.